

# THE CATHOLIC UNIVERSITY OF AMERICA

# DECISION ON APPEAL

TO: Jane Doe
John Roe

FROM: *Lawrence J. Morris* , Chief of Staff/Counselor to the President

DATE: March 24, 2025

RE: Decision on Appeal of Hearing Board's Decision

## INTRODUCTION

John Roe appeals the decision of the Hearing Board, dated February 27, 2025, finding him responsible for the sexual assault of Jane Doe. Having reviewed the record and submissions of the parties, I find:

(1) there is new evidence that affected the outcome of the matter,

(2) there is one procedural irregularity that affected the outcome of the matter, and

(3) there is no evidence of bias by the Hearing Board that affected the outcome.

Roe's appeal is *granted* and the decision of the Hearing Board is *overturned*. Due to the procedural irregularity and the fact that new evidence significantly alters the findings of fact, I am returning the case to a new Hearing Board to consider evidence and determine responsibility.

## APPLICABLE RULES

Under the Title IX Grievance Procedures, an appeal to the Chief of Staff must specifically address at least one of the following criteria:

- Procedural irregularity that affected the outcome of the matter
- New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;

1 | Page

- Evidence showing a Title IX Coordinator, investigator, or decision-maker had a conflict of interest or bias for or against complainants or respondents generally or the individual complainant or respondent that affected the outcome of the matter.

The Chief of Staff may consult other University officials as appropriate before making his decision, but shall not gather additional evidence or speak to any of the individuals who provided evidence or testimony at the hearing. If the Chief of Staff believes that new evidence, previously unknown to either party, significantly alters the finding of fact, the Chief of Staff may return the case to the board or, at his/her sole discretion, a board with some or all new members, to hear more evidence.

## ANALYSIS

Roe's appeal is based on all three criteria. As set forth below, two of the criteria have been met.

### A. There is New Evidence That Significantly Alters the Finding of Facts

The new evidence consists of statements from five University students on core issues relating to the allegations. The new evidence is credible in that it comes from five friends of Doe including two who were with Doe immediately after the alleged sexual assault, and provided information favorable to Roe's appeal.

#### 1. New Evidence of Sex with Another Person Just Prior to the Alleged Assault

The Hearing Board relied on medical records from a SANE exam on October 20, 2024, the day after the alleged sexual assault. The records did not reflect objective evidence of potential anal or vaginal injury; Doe declined medical procedures to assess for such injuries. However, the board noted that Doe had complained of abdominal, vaginal, and anal pain. The board relied on this subjective evidence, and photos showing significant redness and bruising on Doe's neck, to conclude that a traumatic event resulting in physical injury had occurred on the morning of October 19, 2024, for which Roe was responsible. *Hearing Board Decision* at 4.

There is, however, new evidence supporting that another individual could have been responsible for the sexual acts and pain symptoms claimed by Doe According to Doe's friends Rosary Tambunan and Celeste Hurtado, Doe said she had anal sex with T.Y., a non-student, just 2-3 days before the alleged sexual assault by Roe. Doe's friends said T.Y. was an ex-boyfriend but she continued to see him when she went home. Doe also told Tambunan, Hurtado, and friends A.M., Oceane

2 | Page

Regis, and E.B. that T.Y. was physically abusive and would hit her. The new evidence that someone other than Roe had sex with Doe just 2-3 days before the alleged sexual assault by Roe, including anal sex, is potentially exculpatory. The fact that the other person was described by Doe as someone who was physically abusive and engaged in aggressive and violent conduct toward her, is likewise important. This new evidence significantly calls into question the finding that Roe sexually penetrated Doe or was responsible for her symptoms of abdominal, vaginal, and anal pain allegedly caused by aggressive penetration, as well as symptoms of neck pain.

2. New Medical Evidence

As the board noted, the medical records did not include lab results typically associated with a SANE exam, including evidence of DNA. The medical records did not indicate whether *internal* swabs of Doe's vagina or anus were performed. Doe said her body was swabbed for DNA, including the *outside* of her genitals. Doe testified that she was not aware of the swab test results and she believed that such results take 200 days to process. Doe also said there was a way to track the status of results and she had the ability to do so. Because the results were not available to the Hearing Board, it was left to rely on other evidence to determine whether Roe had penetrated Doe's vagina and anus. And, the board was left to presume that the results, when processed, would either identify Roe's DNA in the areas penetrated or that his DNA was not present.

According to Doe's friends, however, Doe was aware of the test results *prior* to the hearing based on a recounting of a dinner with several friends on February 2, 2025, two of whom submitted statements quoting Doe's comments to the friends and her mother. According to Tambunan:

> At around 9 P.M, she [Doe] received a call and left. When she returned, she told us that the rape kit was received and started to cry and hyperventilate saying all they could find was an "unidentified man's DNA on her neck." She then began to cry and said, "it's probably because I didn't consent to anal swabs." She called her mother and informed her about the results then followed by saying, "Make sure the school doesn't see this. We can't let the school know about this."

*Statement of Rosary Tambunan*, at 1. E.B., another friend of Doe who was present, corroborated Tambunan's account of Doe's statements. *Statement of* E.B. at 1. If there are test results showing that no DNA was found in Doe's vagina or anus areas there is no evidence establishing that it was Roe who penetrated these areas as

3 | Page

alleged by Doe. This significantly alters the finding of fact that Roe sexually assaulted Doe.

Doe states that she has not received "written results" of DNA testing and that if they existed the University would have them because Doe authorized the release of her medical records to the University. She also speculates that any DNA found would belong to Roe. The University does not have access to any results because DNA tests are performed by the DC Department of Forensic Services, not the Washington Hospital Center, which treated Doe. When a case is reported to law enforcement the detective on the case is required to provide the *complainant* with the results on request, not anyone else. Nevertheless, the new evidence is not just the results but the fact that Doe reported to two friends prior to the hearing that she was aware of the results, that the results were not favorable to her case, and that she expressed the view that the results should not be shared with the University.

### 3. New Evidence of False Testimony

The board found Doe's account of events to be credible. There is new evidence, however, that casts significant doubt on Doe's credibility. In fact, Doe may have testified falsely during the hearing.[1]

- *Doe's Testimony Relating to Test Results* – New evidence that Doe was aware of the test results at the time of the hearing is significant, as she testified that she was *not* aware of the results and they would not be available until after the hearing. Doe's friends Tambunan and E.B. also heard Doe state that the unfavorable results should not be shared with the University, which would establish an intent to withhold evidence and testify falsely at the hearing.

- *Doe's Testimony Regarding T.Y.* – The board asked Doe whether she was in a relationship with another person at the time of the alleged sexual assault. Doe said she did not believe this issue was relevant. The board said the issue was relevant and asked Doe for a response. Doe said there were "no sexual relationships at the time of the event." She said she was not in a serious romantic relationship at the time and was not seeing anyone else around that time period. She said she was in communication with T.Y. but there was "absolutely nothing, no serious romantic relationship was going on between the two of us." She said it was an "outrageous lie" that at the time of the

---

[1] During the investigation and hearing Doe was informed that providing false information was prohibited by the University and Doe affirmed she would be truthful at the beginning of the hearing.

4 | Page

alleged sexual assault by Roe she was dating someone else at the time. However, Doe's statements have been contradicted recently by her friends who state that Doe had a romantic relationship with T.Y., continued to see him, and was in love with him. Two of her friends, Tambunan and Hurtado, said Doe told them she had sex with T.Y. 2-3 days prior to the alleged sexual assault by Roe.[2]

### 4. New Evidence of Doe's Lack of Credibility

*Doe's Statements about the Alleged Assault* – E.B. one of Doe's friends, said that every time Doe discussed the alleged sexual assault "she never got her story right, small details were changed up constantly and she seemed very confused and it made me strongly doubt and question her." *E.B. Statement* at 1. E.B. added, "It was clear that Doe was lying about a lot of things from the beginning and I think she got caught up in her lie so much that there was no going back." *Id.* Another friend, Hurtado, said Doe would "completely change little details in the story" and "her 'story' was never straight since the beginning and it made us question what the real truth was." *Hurtado Statement* at 2. A.M., another friend who spoke to Doe about the case, said she noticed inconsistencies in Doe's story and as the case progressed there were things that occurred that made her question the veracity of Doe's claims. *A.M. Statement* at 1. Tambunan said Doe told her bits and pieces of her story that would constantly change. She said Doe's story felt uncannily similar to a sexual assault she experienced and had told Doe about.

*Doe's General Lack of Veracity* – Tambunan stated that Doe has engaged in questionable and dishonest behavior multiple times, and that her dishonesty and manipulation would force Roe to leave CUA. *Tambunan Statement* at 2. She added that she understood how deceiving Doe can be. E.B. stated that Doe has a strong tendency to switch up stories and lie about little things. *E.B. Statement* at 1.

### 5. The New Evidence Was Not Reasonably Available to Roe

Doe's claim that the new evidence was reasonably available to Roe because her friends provided other statements during the investigation and at the hearing, and

---

[2] Prior to the hearing, Doe submitted a purported statement from T.Y. stating that they broke up in March 2024 but remained close friends and have spent time together. The statement said that he and Doe had not been in any sort of serious romantic relationship since they broke up. The statement was not signed nor submitted by T.Y. and its authenticity could not be confirmed. Thus, it was not entered into evidence for the Hearing Board to consider. New evidence from Doe's friends indicates Doe drafted T.Y.'s statement casting further doubt on its authenticity.

could have been questioned by Roe, is also without merit. The fact that the *friends* were available for questioning at the hearing is not the issue. The issue is whether the *new evidence* possessed by the friends was reasonably available to Roe at the time, and in this case it clearly was not.

The assertion by Doe that her friends have improper motives or are lying and that the new evidence should be questioned because her friends did not share it earlier goes to the weight of the evidence and the credibility of her friends, issues that are properly for the new Hearing Board to consider.

In addition, given the new evidence is from Doe's "close friends," Roe had no reasonable expectation that they had exculpatory information or that they would share any such information with him. As Doe concedes, "Roe knew the people in my social circle and those I considered close friends." Doe *Response to Appeal* at 1. Regis was Doe's roommate and Tambunan was described by Doe as her best friend. In fact, two of the friends were witnesses to Doe's state immediately after the alleged sexual assault and said that Doe told them she had been assaulted. To Roe (and the University for that matter), the new evidence, favorable to him, was unknown at the time of the hearing, as a result of the investigation or otherwise, and was not reasonably available to him as it surfaced only *after* the hearing.[3]

Aside from the new evidence discussed above, Doe questions the validity of virtually everything else in the witness statements submitted by her close friends. The other facts include evidence of bad character that could rebut Doe's introduction of evidence relating to good character. With respect to these and other facts, she alleges improper motivation by her friends, fabrication, speculates on Roe's role in the surfacing of new evidence, and raises issues of relevance. However, relevance, the weight of evidence, and credibility of witnesses are issues for the new Hearing Board to address.

## B. One Procedural Irregularity Affected the Outcome of the Matter

The Hearing Board drew a negative inference from the absence of a character reference from Roe's father. As the board stated:

---

[3] Roe was also cautious about any contacts with Doe's friends after a no-contact order between him and Doe was entered on October 20, 2024, which Roe interpreted to apply to the friends. Roe's advisor also exercised caution with respect to witnesses in the matter, presumably to avoid any claims of obstruction or interference with the fact finding process. For example, when Tambunan left voicemails with Lou Mejia indicating she had new information to share the advisor sought Mejia's permission to talk to Tambunan. Mejia told the advisor he would speak to Tambunan and share any information he obtained.

6 | Page

> the board drew a negative inference from the fact that Roe did not ask his father …for a character reference …[g]iven the severity and violence of the allegations, the board wondered why Roe would not seek his father's participation in some fashion, and Roe's answers to the board's questions on this front were not convincing.

*Hearing Board Decision* at 5. The negative inference, presumably that Roe's father would *not* attest to good character or the credibility of his son and this is why he did not come forward, or more generally that Roe was not of good character, should not have been drawn.

Character witnesses in Title IX cases are permitted but *not* required. Roe's explanation about why his father did not provide a character reference or appear at the hearing was that he acted on the advice of his attorney that such testimony was not necessary, a plausible and credible reason.[4] Roe did not testify that there was any other basis for this decision other than reliance on counsel.[5] He said his father would have provided a character reference but for his attorney's advice. In fact, Roe's appeal submission contains a positive character reference from his father. Roe was not required to call character references and the negative inference drawn from his father not being called was a procedural irregularity that was of such weight to have affected the outcome of the matter.[6]

Both parties refer to the rule in the grievance procedures relating to circumstances when an inference is drawn from the *refusal* of a witness to appear or submit to cross-examination. In such circumstances, an inference can be drawn but the determination of responsibility cannot be based *solely* on such refusal. The parties disagree on whether the rule was violated. The rule, however, is inapplicable because Roe's father did not refuse to appear or submit to cross-examination.

### C. Other Claims of Procedural Irregularities are Without Merit

---

[4] Moreover, an attorney is likely to believe that the character testimony of a parent would inherently carry little weight.

[5] Communications between an attorney and his client are privileged. Once Roe testified that he acted on the advice of counsel he was not required to disclose the contents of the advice. While the board asked Roe about what his attorney said, the board also told Roe he did not have to answer the question.

[6] The fact that Doe's mother testified but not Roe's father cannot be held against Roe. In fact, Doe's mother was a *fact* witness who testified about her interactions with Roe immediately after the alleged sexual assault and the board did not cite her testimony about Doe's character in its decision. Roe's father was not a *fact* witness.

7 | Page

1. Untruthful Statements of Doe

Roe asserts there was a procedural irregularity because Doe made false statements and knowingly submitted false information during the grievance process. However, any false information or statements by Doe were not known to the Hearing Board at the hearing, and the board could not have relied on such evidence in reaching its decision. This is not an issue of procedural irregularity. Rather this is an issue of new evidence that significantly altered the findings of fact, as discussed above.

2. Doe's Statements Regarding Her Mental Health

Roe asserts the Hearing Board permitted Doe to testify about the *contents* of letters from a doctor and a social worker. In accordance with the University's grievance procedures, Doe received written authorization to discuss her mental health, including that she had been diagnosed with certain conditions:

> During the hearing you will be permitted to share testimony about your mental health including that you have managed anxiety, nausea, and depression. *You are free to share that you have been diagnosed with PTSD and any other mental health diagnoses.* While you have permission to discuss your mental health, the letters from your physician and your therapist, as referenced in your response to the final investigative report, will not be provided to the Hearing Board or the other party.

*Email from Heidi Zeich, 2/19/25.* During the hearing, Doe testified that she had been diagnosed with PTSD and other mental conditions. While she referenced the fact that the University excluded the physician and therapist letters from evidence, she did not reveal anything from the letters other than the diagnoses. Thus, there was no procedural irregularity in the Hearing Board's actions regarding Doe's testimony about her mental health.

The letters from the physician and social worker were not shared with the Hearing Board because they were highly prejudicial to Roe The physician and social worker made careless and irresponsible conclusions about what happened to Doe and Roe's role without any knowledge of the evidence. The social worker also made highly inflammatory statements about Roe's alleged actions and made false statements about the University and the investigation. Under these circumstances, the

letters were not provided to the board to prevent them from considering unfair and unduly prejudicial evidence to Roe.

The letters were also not provided to Roe and his advisor. The highly prejudicial portions of the letters had no relevance or probative value as they were not based on facts, were not inculpatory to Roe and therefore not "directly related" to the allegations raised in the formal complaint. Thus, there was no procedural irregularity in the decision not to provide the letters to Roe and his advisor.[7]

### D. There is No Evidence of Bias by the Hearing Board

Roe contends there is evidence showing the Hearing Board was biased against Roe based on four grounds. However, there is no evidence to support the claim of bias.

#### 1. The Hearing Board Did Not Mischaracterize Evidence

Roe states that the Hearing Board mischaracterized the evidence because it did not address in the decision that multiple witnesses testified to seeing scratches on Doe's back but the scratches were not visible on the video evidence. However, in its decision, the Hearing Board did not refer to or rely on alleged scratches on Doe's back as a basis for finding Roe responsible.

Roe also asserts that the board noted bruising to Doe's right arm "but failed to state that even the Complainant admitted this likely came from another source." *Roe Appeal* at 8. The decision merely references the fact that the *medical records* noted the bruise and no explicit mention of the bruise is made in determining responsibility. In addition, Doe stated during the investigation that she did not know not know what the bruising was from and it *may* have been present prior to the alleged sexual assault. This equivocal statement is hardly an admission from Doe that Roe did not cause the bruise.

#### 2. The Hearing Board's Consideration of Doe's Relationships

Roe contends that the Hearing Board did not address that Doe answered deceptively regarding her relationship status. At the time of the hearing, however, the

---

[7] Given that the physician and social worker relied *solely* on Doe's account of events, and that account is in significant doubt, the letters are now of dubious value.

full extent of Doe's apparent deception was not known to the Hearing Board. There is no evidence of bias regarding the board's consideration of Doe's relationship status.

### 3. Use of the Term "Rape Kit"

In the Hearing Board's decision it used the term "rape kit," referring to the Sexual Assault Forensic Exam. The term "rape kit" is a common reference to a SANE exam.[8] Indeed, the Preamble to the 2020 Title IX Regulations uses the term "rape kit" at least six times, including in a discussion of relevant evidence. Thus, the Hearing Board's use of the term is not evidence of bias.

### 4. Consideration of the Video Evidence

Roe asserts that the Hearing Board did not consider the video evidence showing Doe entering and exiting his dorm room, suggesting her appearance exiting the room did not depict an individual who was impaired or had been sexually assaulted. The Hearing Board explicitly found that Doe was not incapacitated from alcohol use and this had no relevance to the board's deliberation and findings. While Roe states that Pinto does not appear to be distressed or panicked in the videos, multiple witnesses testified that immediately after she returned to her dorm room she was in acute distress. The Hearing Board did review and consider the video evidence and there is no evidence of bias.

### E. Additional Issues for Consideration

Given this case is being sent to a new Hearing Board, there are collateral issues that need to be addressed. During the investigation and hearing Doe was informed that providing false information was prohibited by the University and Doe affirmed she would be truthful at the beginning of the hearing. Should the new Hearing Board conclude that Doe was not truthful during the investigation and at the initial hearing on February 24, 2025, the Dean of Students should take all appropriate disciplinary steps under the Student Code of Conduct. I am also aware that after new evidence surfaced, Doe sent hostile text messages to the witnesses who provided the new evidence, including telling Tambunan to "DIE" and telling E.B., "You're a fat ugly bitch without a heart." These messages should be part of the record considered by the new Hearing Board and if deemed to be obstruction or interference with the case by

---

[8] According to RAINN (Rape, Abuse & Incest National Network) the term is commonly used, "What is a rape kit? You may have heard the term 'rape kit' to refer to a sexual assault forensic exam. The term 'rape kit' actually refers to the kit itself."

10 | Page

Pinto referred to the Dean of Students for consideration under the Student Code of Conduct.

## CONCLUSION

Having carefully reviewed the record and submissions of the parties, I find (1) there is new evidence that affected the outcome of the matter, (2) there is one procedural irregularity that affected the outcome of the matter, and (3) there is no evidence of bias by the Hearing Board that affected the outcome of the matter. Roe's appeal is *granted* and the decision of the Hearing Board is *overturned*. Due to the procedural irregularity and the fact that new evidence significantly alters the findings of fact, I am returning the case to a new Hearing Board to consider evidence and responsibility. The case is referred to the Dean of Students for additional proceedings consistent with this opinion.[9]

---

[9] The direction to have a new Hearing Board is no reflection whatsoever on the performance of the original members of the board who dedicated significant time and effort to this case and the University.